EDWIN ALVEY *vs.* AMERICAN WRITING PAPER COMPANY.

Hampden.    September 22, 1903. — October 20, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Negligence,* Employer's liability.

A master is not liable for an injury to a servant from an obvious danger of his employment, when the servant is permitted to do the work in his own way and can avoid the danger by the exercise of reasonable care.

In an action by a workman in a paper mill for injuries from being struck by the flying up of an iron pipe used to carry steam to a machine called a beater, it appeared, that the pipe that flew up was attached by a loose joint to a vertical pipe connected with the source of the steam, that if steam was applied suddenly it would cause the movable pipe to fly upward, that a workman about to let on the steam could stand in such a position that if the movable pipe flew up he would be out of the way, that a wire had been attached to the lower end of the movable pipe merely for the purpose of moving it when heated by steam, and not for the purpose of fastening it. The plaintiff testified that he had used the wire to lift the hot pipe and had run the beater for five days, during which he had lowered the movable pipe and turned on the steam at least twice on each day, and knew that if he let on the steam too quickly the pipe, if not fastened, would fly up. *Held,* that a verdict rightly was ordered for the defendant; that the plaintiff either appreciated the whole situation, or, if he mistook for a fastening the wire placed on the pipe as a means of raising it, this mistake was negligence on his part, that there was no evidence that the defendant failed in its duty in not providing a fastening, as the appliance could be used safely without one, and that the plaintiff voluntarily stood within the range of the motion of the pipe, if it should fly up, instead of standing where he could not be hit.

TORT, for injuries received while employed in the paper mill of the defendant, with one count under the employers' liability act, alleging a defect in the ways, works and machinery of the defendant, and two counts at common law alleging negligence on the part of the defendant, respectively, in not furnishing and keeping in repair suitable machinery and appliances, and in furnishing the plaintiff with defective and dangerous tools and machinery. Writ dated May 31, 1901.

At the trial in the Superior Court before *Gaskill,* J., it appeared, in addition to the facts stated in the opinion, that the plaintiff had been in the employ of the defendant for four or five years, working on washers and beaters, that a washer and a beater are different things, and that he went to work on a beater about à year before he was hurt.

At the close of the evidence for the plaintiff, the judge ruled that there was no evidence to warrant submitting the case to the jury, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*T. B. O'Donnell,* for the plaintiff.

*W. Hamilton,* ( *W. H. Brooks* with him,) for the defendant.

BARKER, J.    The plaintiff was struck and hurt by the flying up of an iron steam pipe used to convey steam into a beater in a paper mill. The object of introducing steam in the beater was to heat the materials which were in it being ground into pulp, and which were in a semifluid state. The pipe which flew up was two feet and nine inches in length and one inch and three-quarters in diameter and was attached by a loose joint at the upper edge of the beater to a similar vertical pipe fastened to the edge of the beater and to the ceiling of the room and connected with the source from which the hot steam was supplied. In this vertical pipe was a valve by which to turn the steam on or off. When the steam was not being applied to the material in the beater the movable pipe rested in a horizontal position on the upper edge of the beater. When steam was to be applied the end of the movable pipe was taken from the edge of the beater and the pipe swung by its own weight into a vertical position within the beater, and with its lower end immersed in the semifluid mass which it was intended to be the means of heating by serving as a conduit for the injection of steam into

the material which was being ground into paper stock. The opening of the valve in the fixed vertical steam pipe allowed the steam to pass through the movable portion of the pipe into the contents of the beater. There was no appliance designed to hold the movable pipe in a vertical position, and nothing to keep it in such a position except its own weight and the resistance of the semifluid mass in which it was immersed. When about to turn the valve and let on the steam the workman could stand in such a position that if the movable pipe flew up he would be out of its way, or he could so stand that in such case he would be in its way. When the steam was on, the movable pipe became so heated that it could not be handled with safety or comfort, and a wire had been attached to its lower end and carried over the stem of the valve as a means of raising the movable pipe when heated. This wire had no tendency to keep the movable pipe in a vertical position.

The whole apparatus was entirely simple, visible, and easily understood. The only danger in its use was that if steam should be applied suddenly its pressure against the material in which the movable pipe was immersed would cause the movable pipe to swing upward with violence and injure a person with whom it might come in contact.

The evidence at the trial consisted of the testimony of a civil engineer who described and gave the measurements of the beater and its parts and of the room in which it was, of the plaintiff's own testimony and certain plans and exhibits intended to illustrate the beater and its steam connections. At the close of the evidence a verdict was ordered for the defendant and the question raised by the plaintiff's exceptions is whether he should have been allowed to go to the jury upon the case. We think that upon the evidence as it stood there were good reasons why the plaintiff could not recover.

It might be found from his testimony that he thought that the wire running from the end of the movable pipe to the valve stem was designed to keep the movable pipe from flying up. But it is plain that it had no such purpose and that it could not have any such effect. To have supposed that it could have that effect and to have relied upon it as an efficient means of keeping the movable pipe in a vertical position when steam was to be turned

on was in itself a negligence. The plaintiff testified that he had used the wire to lift up the hot pipe, although he denied that he knew that it was intended solely for that purpose. But the whole apparatus was simple and open to observation, and the plaintiff testified that he had run that particular beater for five days during which he had lowered the movable pipe and turned on the steam at least twice on each day, and that he knew of the power of steam and that if he let on the steam too quickly the pipe if it was not fastened would surely fly up.

If he appreciated the fact that there was no fastening intended to hold the movable arm in a vertical position when steam was to be turned on, he appreciated the whole situation, which was as open and obvious a one as could be to any workman of his experience, and as it could be to his employer. If he mistook for a fastening the wire placed upon the pipe as a means of raising it, that mistake was a negligence and it alone prevented him from fully appreciating a danger which any workman with his knowledge of the power and action of steam would have appreciated at the first, and which he therefore ought not to be permitted to say that he did not appreciate.

Besides this a jury ought not to be permitted to find negligence on the part of the defendant from the evidence as it stood. The appliance of steam to the contents of beaters in the process of paper making seems from the evidence to have been a very recent improvement. The apparatus put in by the defendant was one which when used with care and in the method designed could be used as it was with safety. The plaintiff testified that he knew the proper method to be used which was merely to turn the steam on slowly and not suddenly. To find that the defendant failed in its duty to the plaintiff in not providing a fastening when it was a simple matter so to use the appliances provided that no injury could happen with the apparatus as it was, without a fastening, would be more than a jury ought to be allowed to do upon the evidence as it stood.

Again the plaintiff voluntarily stood within the range of motion of the pipe if it should fly up, although it was entirely feasible for him to have stood in such a position that he could not be hit.

We think the case falls within the general rule "that when

the danger is obvious, and is of such a nature that it can be appreciated and understood by the servant as well as by the master, or by any one else, and, when the servant has as good an opportunity as the master or as any one else of seeing what the danger is, and is permitted to do his work in his own way, and can avoid the danger by the exercise of reasonable care," the servant cannot recover. *Lothrop* v. *Fitchburg Railroad*, 150 Mass. 423, 424, and cases cited.

*Exceptions overruled.*